United States District Court
Southern District of Texas
**ENTERED**
October 01, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **WELDON THOMPSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:21-CV-00022** |
| | § | |
| **BRIAN DALLAS,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Weldon Thompson—a state inmate—suffered serious injuries when his hand got trapped under a commercial deep fryer while he was welding wheels onto its base. Thompson sued the prison official who ordered him to perform the welding, Brian Dallas, arguing that Dallas violated Thompson's constitutional rights by contributing to unsafe working conditions that caused Thompson's injury. Qualified immunity bars Thompson's suit. Consequently, the Court **GRANTS** the Defendant's Motion for Summary Judgment. (Dkt. No. 46).

I.    **BACKGROUND[1]**

In 2019, Plaintiff Weldon Thompson was an inmate in the Texas Department of Criminal Justice ("TDCJ"), (Dkt. No. 41 at 1 ¶ 2), where Defendant Brian Dallas was a maintenance and kitchen supervisor, (*id*. at 1 ¶ 3); (Dkt. No. 46 at 4). On February 12,

---

    [1]    Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of Thompson. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

2019, while Thompson was working in TDCJ's maintenance shop, Dallas asked him to weld wheels onto the base of a commercial deep fryer. (Dkt. No. 46-1 at 11); (Dkt. No. 46-3 at 2). Thompson knew how to weld, (Dkt. No. 41 at 3 ¶ 14); (*see also* Dkt. No. 46-2 at 26), but he alleges that Dallas did not give him personal protective equipment ("PPE") and left Thompson alone while he was welding the wheels to the cart, (Dkt. No. 41 at 4 ¶ 15). Thompson later testified in a deposition, however, that he received gloves and a welding helmet. (Dkt. No. 46-2 at 7).

After Thompson finished welding the wheels to the deep fryer, a different prison staff member told Thompson and another inmate to move it. (Dkt. No. 41 at 2 ¶ 7). During the move, an insert in the deep fryer fell out and crushed Thompson's right hand. (*Id.*). According to Thompson, prison staff took five to seven minutes to free his hand. (Dkt. No. 47 at 2). And although Thompson was immediately taken to an emergency room and, later, a hospital, (Dkt. No. 41 at 2–3 ¶ 8), his hand was severely injured, (*id.*). The middle finger was smashed, (*id.* at 2 ¶ 7); the nerves on the wrist were damaged, (*id.*); and his pinkie finger was amputated, (*id.* at 2–4 ¶¶ 7, 17).

On February 10, 2021, Thompson filed this action under 42 U.S.C. § 1983. (Dkt. No. 1). Thompson initially brought claims against the TDCJ, its Executive Director, and Dallas in his official capacity, (Dkt. No. 3 at 1–2 ¶¶ 3–5), but the Court dismissed those claims without prejudice under Rule 12(b)(1) as barred by sovereign immunity, (Dkt. No. 33). The Court permitted Thompson to file an amended complaint consistent with the order. (*Id.* at 4).

In his Second Amended Complaint, (Dkt. No. 41), Thompson dropped all previous claims and raised two new Section 1983 claims against Dallas in his *individual* capacity. (*Id.* at 1).   Thompson alleged that Dallas violated (1) the Eighth and Fourteenth Amendments' prohibitions against cruel and unusual punishment;[2] and (2) the First, Eighth, and Fourteenth Amendments' prohibitions against "deliberately indifferent policies, practices, customs, training, and supervision." (*Id*. at 3–6 ¶¶ 10–32).

Dallas denied any wrongdoing, (Dkt. No. 45 at 2 ¶¶ 7–10, 12), and asserted that Thompson's claims were barred by qualified immunity, (*id*. at 3 ¶ 17).  Five months later, Dallas moved for summary judgment, reiterating that Thompson's claims could not "overcome Dallas's presumptive entitlement to qualified immunity." (Dkt. No. 46 at 1).

## II.    LEGAL STANDARDS

### A.    SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

---

[2]    Although this complaint does not explicitly reference Section 1983 in its first count, Thompson's Response to Defendant's Motion to Dismiss noted that "[p]roceeding in Defendant Brian Dallas's individual level is authorized under 42 U.S.C. §1983." (Dkt. No. 18 at 1).  His Second Amended Complaint also includes in the first count the statement that "Defendant, as a TDCJ employee, acted under color of state law in their official capacity and their acts or omissions were conducted within the scope of their official duties or employment." (Dkt. No. 41 at 4 ¶ 20). Moreover, Dallas and Thompson dispute both counts under the rubric of Section 1983. (*See, e.g.*, Dkt. No. 45 at 2–3 ¶¶ 11, 13, and 17).  Therefore, the Court does the same.

477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "A qualified immunity

defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d

249, 253 (5th Cir. 2010). After a defendant has pled "qualified immunity as a defense, the

plaintiff 'must rebut the defense by establishing a genuine fact issue as to whether the

official's allegedly wrongful conduct violated clearly established law.'" *Ramirez v. Killian*,

113 F.4th 415, 421 (5th Cir. 2024) (quoting *Brown,* 623 F.3d at 253). "The plaintiff bears the

burden of negating qualified immunity, but all inferences are drawn in his favor." *Brown,*

623 F.3d at 253 (citation omitted).

### B.    QUALIFIED IMMUNITY

As an employee of the TDCJ, Dallas may assert the defense of qualified immunity

when sued in his personal capacity for actions taken under color of state law. 42 U.S.C.

§ 1983; *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). Qualified

immunity protects government officials from liability for damages when they violate the

law but could have reasonably believed they were acting lawfully. *Ramirez*, 113 F.4th at

421. To overcome a qualified immunity defense, a plaintiff must show not only that

(1) the official violated a statutory or constitutional right but also that (2) the right was so

"clearly established" at the time of the challenged conduct that a reasonable officer would

be on notice that their conduct was against the law. *Id*. (citing *Ashcroft v. al-Kidd*, 563 U.S.

731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

Courts may begin their evaluation with either step. *See Ramirez*, 113 F.4th at 421–

22. And the thrust of Thompson's response rests on the "obviousness" of the

constitutional violations. (*See* Dkt. No. 47 at 2–3). So, the Court starts with the second

step of the qualified immunity analysis—whether the asserted constitutional rights were

"clearly established" at the time of the alleged violation.  *See Villarreal v. City of Laredo*, 94

F.4th 374, 394 (5th Cir. 2024) (en banc).

A right is "clearly established" if it is "'sufficiently clear that every reasonable

official would have understood that what he is doing violates that right.'"  *Cope v. Cogdill*,

3 F.4th 198, 204 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193

L.Ed.2d 255 (2015) (per curiam)).  This standard is met only if "'the state of the law at the

time of the incident provided fair warning to the defendants that their alleged [conduct]

was unconstitutional.'"  *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per

curiam) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895

(2014) (per curiam)).  Consequently, to establish that a constitutional right was "clearly

established," a plaintiff must generally "'identify a case in which an officer acting under

similar circumstances was held to have violated the [Constitution],' and explain 'why the

case clearly proscribed the conduct of that individual officer.'"  *Cope*, 3 F.4th at 204

(quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).  "While an

exact case on point is not required," the specifics of the officers' violation must be

"'beyond debate.'"  *Id*. (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)).

Broad, general propositions of law are not enough.  *Id*.; *see Ashcroft*, 563 U.S. at 742, 131

S.Ct. at 2084.

## III.   DISCUSSION

Thompson has not shown that a "clearly established" right existed at the time of

the alleged misconduct.  Thompson's response brief does not include a single citation to

Case 2:21-cv-00022   Document 58   Filed on 09/30/24 in TXSD   Page 6 of 7

legal precedent or authority. (*See generally* Dkt. No. 47). And the Court has been unable to locate such a case. As a result, Thompson has not carried his burden. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam). That failure dooms Thompson's case. *Id.*; *Cass*, 814 F.3d at 733 (granting qualified immunity even though the defendant cited no cases in his favor to the district court because plaintiffs bear the burden of showing specific law on point).[3]

Because Thompson has not met his burden on the second prong of the qualified immunity standard, the Court need not address whether Dallas violated Thompson's constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

---

[3]    In *Hope v. Pelzer*, the Supreme Court noted that in some "obvious" cases, an officer may be on notice that their conduct is unconstitutional even absent a factually similar precedent. 536 U.S. 730, 740–41, 122 S.Ct. 2508, 2515–16, 153 L.Ed.2d 666 (2002). *Hope* does not save Thompson's case. The Fifth Circuit has held that this statement in *Hope* "was dicta"; the Supreme Court ultimately rested its holding on "binding circuit precedent prohibiting extremely similar conduct" like in *Hope*. *Morgan v. Swanson*, 659 F.3d 359, 373 (5th Cir. 2011) (en banc). Moreover, subsequent Supreme Court cases have strayed away from *Hope*, *see, e.g.*, *Ashcroft*, 563 U.S. at 742, 131 S.Ct. at 2084, and the Fifth Circuit has questioned whether *Hope* even survives these newer cases, *see Morgan*, 659 F.3d at 373. Therefore, the Court's analysis applies the more recent mandate that a plaintiff must rebuff a claim of qualified immunity with cases that "squarely govern[]" the defendant's conduct and "clearly establish" that it violated a constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S.Ct. 596, 600, 160 L.Ed.2d 583 (2004) (per curiam). And in any event, Thompson has not satisfied the *Hope* standard. A guard ordering an inmate to weld wheels onto a deep fryer under the conditions articulated in Thompson's complaint is not the type of egregious conduct to which the law would "'apply with obvious clarity.'" 536 U.S. at 741, 122 S.Ct. at 2516. In *Hope* for example, the Supreme Court held that placing a prisoner in leg irons, taking off his shirt to expose him to the sun, handcuffing him to a hitching post for seven hours, giving him minimal water, no bathroom breaks, and taunting him about his thirst "obviously" violated the Eighth Amendment. *Id*. at 733–35, 741–42, 122 S.Ct. at 2512–13, 2516. A similarly "obvious" constitutional violation is not before this Court here.

6

## IV.    CONCLUSION

Considering the above analysis, the Court **GRANTS** Defendant's Motion for Summary Judgment.    (Dkt. No. 46).    The Court **DISMISSES WITH PREJUDICE** Plaintiff's two claims under 42 U.S.C § 1983 against Defendant in his individual capacity.

It is SO ORDERED.

Signed on September 30, 2024.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**